## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**CINDE R. TROUTMAN,**
    **Plaintiff,**

**v.**                                **Case No. 3:11cv89/WS/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant**.

---

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34, and application for supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-83.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner therefore should be affirmed.

PROCEDURAL HISTORY

On March 1, 2006, Cinde R. Troutman (who will be referred to by name, as plaintiff, or as claimant) protectively filed an application for disability insurance benefits, alleging disability beginning October 10, 2005.  T. 148-53.  On March 20, 2006, claimant protectively filed an application for supplemental security income. T. 154-59.  Claimant's applications were denied initially on August 24, 2006, and upon reconsideration on January 25, 2007.  T. 102-05.[1]  Claimant appealed and requested a hearing, which was held before an administrative law judge ("ALJ") on October 17, 2008.  T. 69-101.  A supplemental hearing was held on February 19, 2009.  T. 26-56.  Plaintiff appeared and testified at both hearings.  Eric R. Anderson, an impartial vocational expert, also appeared and testified at the February 2009 hearing.  In a decision dated April 8, 2009, the ALJ denied claimant's applications, finding Ms. Troutman had not been under a disability, as defined in the Act, from October 10, 2005, through the date of the decision.  T. 13-25.  The Appeals Council of the Social Security Administration denied plaintiff's request for review in a notice dated December 20, 2010.  T. 1-5.  The ALJ's decision thus stands as the final decision of the Commissioner and is now subject to review in this court pursuant to section 1383(c) of the Act.

<u>FINDINGS OF THE ALJ</u>

In his written decision the ALJ made several findings relative to the issues raised in this appeal:

1.  Claimant met the insured status requirements of the Social Security Act through September 30, 2008.

_____

[1] The administrative record, as filed by the Commissioner, consists of ten volumes (doc. 6 through 6-9), and has 542 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

2.  Claimant has not engaged in substantial gainful activity since October 10, 2005, the alleged disability onset date.

3.  Claimant has the following severe impairments:  Hepatitis C, colitis, and emphysema.

4.  The medical and non-medical evidence, as summarized and discussed in the administrative decision, has not established depression and anxiety as impairments that entailed significant work-related limitations of record for a continuous period of at least 12 months during the period of adjudication.  The medical evidence has not suggested significant work-related limitations of a 12-month duration arising therefrom, and no treating physician or other medical source has placed work restrictions on the claimant because of these conditions.  Therefore, depression and anxiety are found to be "non-severe" for any 12 full months during the relevant period of adjudication.

5.  Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6.  Claimant has the physical residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. Claimant has no postural, manipulative, visual, communicative, or environmental limitations.

7.  Claimant is capable of performing her past relevant work as an office manager, a sales representative, and a bartender.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8.  Claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2005, through the date of the administrative decision.

## STANDARD OF REVIEW

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 404.1512.  "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's

impairments, the claimant can perform." *Olds*, 2011 WL 691595, at *2. "If the Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner." *Id.*

FACT BACKGROUND AND MEDICAL HISTORY[2]

Plaintiff was born on January 30, 1967, making her 39 years of age in March 2006, when the applications were filed.  T. 148.  Claimant has a high school education and is able to communicate in English.  T. 187.  Alleging disability beginning October 10, 2005, plaintiff cites a history of hepatitis C, cirrhosis of the liver, colitis with chronic diarrhea, emphysema, depression, and anxiety.  T. 177, 181. Claimant reported past work experience as a bartender, housekeeper, and swimming pool store manager.  T. 182-83.

The evidentiary record reflects that claimant presented to the office of primary care physician Dr. Samuel R. Greenlee on October 3, 2005, to establish as a new patient.  Plaintiff, who was seen by Dr. Greenlee's nurse practitioner, Judy A. Smith ("Nurse Smith"), reported a history of anxiety and insomnia.  Nurse Smith prescribed an anti-anxiety medication, an anti-depressant, and a sleeping pill.  Laboratory testing performed by Dr. Greenlee's office in October 2005 revealed that Ms. Troutman was positive for hepatitis C and that her liver enzymes were slightly elevated.  A CT scan of claimant's brain was normal, with no evidence of encephalopathy.  T. 307-18.  On September 7, 2006, Nurse Smith completed a physical residual functional capacity assessment.  Nurse Smith determined that plaintiff cannot walk or stand for more than one hour in an eight-hour workday, and can sit for only one to two hours.  T. 513.

---

[2] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, this synopsis of medical evidence will be supplemented as called for in the Analysis section.

Concluding that claimant can never lift more than five pounds and can lift five pounds only on occasion, Nurse Smith ultimately opined that Ms. Troutman is "disabled from full-time continuous employment."  T. 513-14.

Dr. Greenlee's office referred plaintiff to gastroenterologist Dr. Michael Fry for evaluation of gastrointestinal complaints, including intermittent nausea, vomiting, weight gain, and persistent diarrhea three to five times per day.  T. 375.  After his initial examination of Ms. Troutman on January 10, 2006, Dr. Fry noted that claimant's liver showed no masses, enlargement, or ascites.  T. 375.  An otherwise normal colonoscopy performed on January 16, 2006, identified hemorrhoids, and random colon biopsies revealed colitis with cryptitis.  T. 358, 372, 374.  An abdominal ultrasound performed on January 26, 2006, was normal.  T. 420.  On February 8, 2006, Dr. Fry saw plaintiff for a follow-up visit and assessed nausea and heartburn, and diarrhea with colitis.  T. 373.  Dr. Fry ordered an upper endoscopy, which resulted in diagnoses of gastroesophageal reflux disease ("GERD"), esophagitis, and gastritis.  T. 264, 268.  Ms. Troutman also underwent a liver biopsy on February 13, 2006, which revealed mild chronic hepatitis, grade 2, stage 0, mild fatty change, and mild hemosiderosis, with no fibrosis.  T. 418.  An esophagogastroduodenoscopy with biopsy, performed on February 15, 2006, confirmed the diagnoses of GERD and gastritis.  T. 370.

Claimant started treatment of her hepatitis C infection in March 2006, but the treatment was halted in June of that year, secondary to an increase in her liver enzymes.  T. 367-68, 365-66, 362.  On June 1, 2006, plaintiff presented at Dr. Fry's office "complaining of constant diarrhea."  T. 365.  Dr. Fry prescribed Asacol, a digestive tract anti-inflammatory.  T. 366.  Ms. Troutman returned to Dr. Fry on June

15, 2006, and reported that she was still having diarrhea.  T. 362.  Plaintiff later resumed hepatitis C treatment and complained of muscle pain and fatigue in September 2006.  Ms. Troutman visited with Dr. Fry on November 14, 2006, at which time she asserted that she had once again stopped her hepatitis treatment.  Claimant continued to complain of chronic diarrhea, prompting Dr. Fry to discontinue the Asacol and prescribe Pepto-Bismol.  T. 360-61.  After plaintiff stated that the Pepto-Bismol caused nausea, Dr. Fry switched her to Imodium.  Dr. Fry reported that claimant restarted hepatitis C treatment in January 2007, but that she exhausted her medications after four weeks and was unable to obtain refills.  T. 358-59.

On August 8, 2006, plaintiff was examined by Dr. Mark D. Moreland, Psy.D., who completed a disability psychological evaluation.  T. 289-91.  Dr. Moreland observed that Ms. Troutman's "thought processes were logical" and found no evidence of any perceptual abnormalities.  Dr. Moreland also determined that claimant's memory is "grossly intact," but that her "concentration, persistence, and pace appear limited."  "As a result," Dr. Moreland concluded, "she appears to have limited ability to complete tasks timely and appropriately and does not appear to have the ability to tolerate the mental demands of a work environment."  T. 290.  Dr. Moreland summarized plaintiff's functional abilities:

> Ms. Troutman appears able to follow simple instructions and interact in a meaningful manner with others in spite of her emotional issues.  She displays evidence of significant attention and concentration problems, however, and undoubtedly has difficulty withstanding the emotional stress of a routine workday.  Further proof of her emotional vulnerability is her frequent suicidal ideation.

T. 291.  In consequence, Dr. Moreland assessed major depressive disorder, single episode, severe without psychotic features, borderline personality disorder, and hepatitis C.  T. 291.

At the request of the Social Security Administration, plaintiff underwent a consultative physical examination by Dr. Michael E. Kasabian on December 18, 2008.  Dr. Kasabian observed that Ms. Troutman had a history of hepatitis C, for which she had received treatment "on and off," colitis with chronic diarrhea, depression, emphysema, and frequent fatigue.  T. 518.  Upon physical examination, Dr. Kasabian noted slight epigastric tenderness, but no organomegaly, peripheral edema, or neurological deficits.  T. 518.  Dr. Kasabian further observed normal fine grip strength and dexterity, and that claimant could ambulate without a limp or assistive device.  T. 518.  A hepatic panel revealed that plaintiff's albumin and bilirubin were within normal limits and only slightly elevated liver enzymes.  T. 520. Dr. Kasabian stated his diagnostic impressions as history of hepatitis C, colitis, emphysema, and depression.  T. 519.

In conjunction with his examination of Ms. Troutman, Dr. Kasabian completed a Medical Source Statement in which he provided his opinions regarding claimant's physical capacities and limitations.   Dr. Kasabian stated that plaintiff can continuously lift and carry 11 to 20 pounds, frequently lift and carry 21 to 50 pounds, and occasionally lift and carry 51 to 100 pounds.  T. 521.  Dr. Kasabian determined that claimant can sit, stand, and walk for a total of eight hours each during an eight-hour workday, that she does not require the use of a cane to ambulate, that she can continuously use her hands for reaching, handling, fingering, feeling, and pushing or pulling, and that she can continuously use her feet for the operation of foot controls.

T. 522-23.   Dr. Kasabian placed no postural or environmental limitations on claimant's activities.  T. 524-25.

HEARING BEFORE THE ALJ

The initial administrative hearing commenced on October 17, 2008, with the testimony of Ms. Troutman, who asserted that she cares for four children, ages nine to 15.  T. 75-76.  Claimant testified that she was last employed from 1996 to 2003, when she managed a swimming pool store owned by her parents and tended bar.  T. 78.  Regarding her gastrointestinal problems, plaintiff explained that she had used the bathroom seven times the morning of the hearing.  T. 87.  On a typical day, claimant averred, she uses the bathroom 40 to 50 times, spending approximately 15 minutes at each visit.  T. 98-99.  Ms. Troutman stated that she cannot sit for long periods of time because her muscles begin to cramp.  T. 89.  Explaining that she experiences shortness of breath and anxiety attacks, claimant testified that she is restricted in the amount of walking she can do.  T. 90.  Plaintiff asserted that she can lift objects under 15 pounds, prepare meals, and care for her personal hygiene.  T. 91-94, 97.  As a general rule, however, Ms. Troutman does not clean the house, do laundry, or shop for groceries.  T. 94-96.  The ALJ, questioning claimant's testimony concerning the frequency of her bowel movements, directed Ms. Troutman to see a gastrointestinal specialist.  T. 101.

On February 19, 2009, plaintiff appeared at a supplemental administrative hearing, stating that she "always" saw Nurse Smith when she visited Dr. Greenlee's office.  T. 32.  According to Ms. Troutman, she "never" saw Dr. Greenlee personally.  T. 33.  Claimant elaborated on the extent of her chronic diarrhea and stated that she

had been experiencing the symptoms for three years.  In contrast with her testimony at the first hearing, plaintiff testified that she uses the bathroom "around 20 times a day," at an average time of 10 minutes for each episode.  T. 40-41.  Ms. Troutman maintained that the anti-diarrheal medications did not offer relief.  T. 41.  Due to back and leg pain, claimant spends much of the day laying on the couch and watching television.  T. 43.  Nonetheless, plaintiff does not take pain medication.  T. 34-35.

At the supplemental hearing, the ALJ inquired of vocational expert Eric R. Anderson as to claimant's work prospects:

> If the claimant is restricted to light work and basically there is a claim of hepatitis C.  She is not currently taking any medicine for it.  She was diagnosed with it, no question about it.  She's taking no pain medicine. Her ADL's (activities of daily living), as far as I can tell, she's in charge of the household with four children in it.  She's got her hands full.  She has a problem with diarrhea, taking nothing for it, says she uses the bathroom on a pretty frequent basis.  But as far as psychological there was a proposed history of depression.  She was noted in the history as being stable.  Mental illness in the record indicates that she has been prescribed Klonopin, Wellbutrin, Ambien by Dr. Greenly.  Nothing referred to any formal psychiatric treatment. . . . As far as the restrictions of daily living, they're mild.  She reports limitations associated with physical problems.  She complains of back, but there was never any finding as far as the back was concerned.

T. 46-47.  In addition, the ALJ asked Anderson to account for plaintiff's mental limitations, as observed by Dr. Moreland:

> But she does cook, clean, shop and do the laundry.  As far as, she has no social life which I can believe she is so limited.  Her friends help with household chores at her consultative exam.  I imagine she still is. Testified about laying down, sometimes . . . .  She was able to interact in a meaningful manner and appearance.   As far as difficulties

maintaining concentration, persistence and pace, they were mild difficulties. She had concentration difficulties manifested by several mistakes in Serial 7's and had delayed recalls of information. Still has difficulty with memory and concentration, found limited. She can use the computer. There are no episodes of decompensation and as far as the C criteria it was not established. Dr. Moreland considered the claimant to have significant problems with attention and concentration, but he found stress of a routine work day. But Dr. Moreland's opinion is given only modest weight because they're not real supportive. As far as the totality of the evidence she's running the household and . . . attention has to be paid raising her children. There is a mild decrease in mental functioning. The loss of functioning is not severe and conclusion is consistent with the claimant's functioning data; however, her overall . . . appropriateness of activities. And with those restrictions is she able to do any of her past relevant work?

T. 47-48. Anderson responded that despite such restrictions and limitations, plaintiff can perform "[a]ll of her past relevant work," and agreed that Ms. Troutman can perform work as a an office manager, clerk, and bartender. T. 48. Claimant's attorney then inquired of Anderson as to the availability of jobs in the national economy for a person with claimant's medical and vocational profile and the need to take no fewer than five restroom breaks in an eight-hour workday. Anderson replied that "[p]ast relevant work would be feasible with those limitations." T. 54-55.

## ANALYSIS

Plaintiff raises two issues in this appeal, arguing (1) that the ALJ did not give proper weight to the opinions of her treating physician and (2) that the ALJ erred in his evaluation of claimant's ability to perform routine daily activities. Generally speaking, Ms. Troutman maintains that the ALJ's decision should be reversed because, she contends, it is not supported by substantial evidence. (Doc. 8, 4, 7-8)

Claimant contends first that the ALJ erred by failing to establish good cause for rejecting the opinion of Nurse Smith, who works in conjunction with Dr. Greenlee.  (Doc. 8, 6)  Plaintiff asserts that the ALJ, in contravention of controlling case law, rejected Nurse Smith's opinions on "conclusory grounds."  (Doc. 8, 6)  "The opinion of a treating physician . . . 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.* at 1241.  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.

Nurse Smith completed a physical residual functional capacity assessment on September 7, 2006, opining that claimant can be expected to walk or stand for less than one hour in an eight-hour workday, and sit for just one to two hours.  T.  513.  Plaintiff, according to Nurse Smith, can lift less than five pounds only on occasion, and never five pounds or more.  T. 513.  Nurse Smith determined that Ms. Troutman is restricted in climbing stairs or ladders, and from bending and kneeling.  T. 513-14.  In Nurse Smith's opinion, claimant requires rest every 15 minutes and experiences generalized anxiety.  T. 514.  Finally, Nurse Smith concluded that plaintiff is "disabled from full-time continuous employment[.]"  T. 514.  In turn, the ALJ "determined that the conclusions set out in [the physical residual functional capacity

assessment] regarding the claimant's physical limitations can not be assigned any significant evidentiary weight." T. 21.

Contrary to plaintiff's argument on this issue, the ALJ articulated good cause for discounting the opinions of Nurse Smith, whose physical residual functional capacity assessment offers little insight into the underlying medical causes of such dramatically marked limitations.  As the ALJ recognized, Nurse Smith's assessments regarding Ms. Troutman's physical limitations are not supported by objective physical examination findings.  In contrast, multiple physical examinations have failed to document any abnormal clinical findings to support claimant's allegations of chronic daily muscle cramps and back pain.  Indeed, during the supplemental hearing, plaintiff conceded that she takes no prescription pain medication. T. 34-35. Nurse Smith's conclusions are further contradicted by the testimony of claimant herself, who on two occasions asserted that she is able to lift up to 15 pounds.  T. 35, 91-92.   The assessments of Nurse Smith are also inconsistent with plaintiff's activities of daily living, which an ALJ may consider in determining a claimant's residual functional capacity.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Plaintiff testified that she can prepare meals, perform light household chores like sweeping and laundry, shop for groceries occasionally, maintain her personal hygiene, and care for four children under the age of 15.  T. 75-76, 92-97.

The ALJ, moreover, properly rejected Nurse Smith's ultimate conclusion that Ms. Troutman is disabled from full-time continuos employment.  A physician's opinion on an issue reserved to the Commissioner of Social Security, such as whether an individual is disabled, is never entitled to controlling weight or special

significance.  *See* SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996).  In any event, Nurse Smith does not qualify as an "acceptable medical source" under the current regulations.  *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (designating nurse practitioners as an "other source" of medical evidence).  The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is significant in that only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight.  *See id.*; *see also Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998) ("The ALJ was permitted to accord less weight to chiropractors, and other nonmedical doctors, than to medical doctors.").

    As the ALJ also recounted, "Nurse Smith's statements regarding the claimant's physical limitations are . . . completely inconsistent with the conclusions of the examining physician, Dr. Kasabian."  T. 21.  Dr. Kasabian, who, as a licensed physician, does qualify as an "acceptable medical source," asserted that plaintiff can continuously lift and carry 11 to 20 pounds, frequently lift and carry 21 to 50 pounds, and occasionally lift and carry 51 to 100 pounds.  T. 521.  Dr. Kasabian determined that claimant can sit, stand, and walk for a total of eight hours each during an eight-hour workday, continuously use her hands for reaching, handling, fingering, feeling, and pushing or pulling, and continuously use her feet for the operation of foot controls.  T. 522-23.  Furthermore, Dr. Kasabian placed no postural or environmental limitations on claimant's activities.  T. 524-25.  The only significant limitation Dr. Kasabian observed was that plaintiff "may get fatigue from hepatitis C."  T. 521.  Dr. Kasabian's findings and opinions are supported by Ms. Troutman's activities of daily

living and by the record as a whole, which reveals no objective medical evidence tending to explain the allegedly marked physical limitations assessed by Nurse Smith. The ALJ, in effect, concluded that Nurse Smith's opinions were not bolstered by the evidence and thus articulated good cause for rejecting those opinions.  *See Phillips*, 357 F.3d at 1240.  Assuming *arguendo* Nurse Smith were a "treating physician," the court finds that the ALJ discredited her opinions in accordance with the prevailing legal standard.

The court observes that what little factual argument claimant offers on this issue focuses on her gastrointestinal problems and supposedly "severe" chronic diarrhea.  (Doc. 8, 6)  The ALJ did not fail to acknowledge that Ms. Troutman has been diagnosed with colitis with chronic diarrhea.  T. 23.  Accepting that diagnosis, however,  the evidence of record largely contradicts plaintiff's present claims as to the severity of the problem, especially concerning the frequency of her bowel movements.  Dr. Fry's treatment notes reflect that on January 10, 2006, claimant reported that she had diarrhea three to five times per day.  T. 375.  On February 28, 2006, Dr. Fry observed that claimant's chronic diarrhea was "minimally problematic." T. 369.  After examining plaintiff on March 17, 2006, Dr. Fry reflected, "The patient reports intermittent diarrhea but states that this has not been problematic."  T. 367. In November 2006 and January 2007, Dr. Fry recommended that Ms. Troutman use over-the-counter medication for her diarrhea.  T. 359, 361.  As the ALJ recognized, "[n]owhere in Dr. Fry's treatment notes does he state that claimant reported having 40 to 50 episodes of diarrhea per day."  T. 23.  A rational person would react with incredulity to an assertion that plaintiff would not have reported diarrhea of such

frequency or that her physician, himself a GI specialist, would not have addressed it in his treatment notes.  In short, the court finds no fault with the ALJ's conclusion that nothing in the medical records supports the allegation that Ms. Troutman's condition causes her to use the restroom 40 to 50 times per day, as she testified at the first hearing, or even 20 times per day, as she testified at the supplemental hearing. T. 23.

For her second point, claimant contends the ALJ erred in his evaluation of her ability to perform routine daily activities.  According to plaintiff, her self-described activities of daily living are not dispositive evidence of an ability to sustain gainful employment.  (Doc. 8, 7)  "The Secretary must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain."  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  *Id.*  It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "But the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."  *Id.*

"Participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability.  *See Lewis v. Callahan*, 125

F.3d 1436, 1441 (11th Cir. 1997); *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998) (holding that minimal daily activities such as housework, light cooking, and light grocery shopping are not dispositive evidence of a claimant's ability to perform sedentary work (citing *Walker v. Heckler*, 826 F.2d 966 (11th Cir. 1987). Nor does the ability to sustain family relationships demonstrate a capacity for sustained gainful work where there are debilitating impairments present. *See Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990) (citing *Dorf v. Bowen*, 794 F.2d 896, 902 (3d Cir. 1986)).  Significantly, however, "[t]he regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process." *See Macia*, 829 F.2d at 1012; *see also Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

A thorough review of the administrative decision reveals that the ALJ did not rely solely upon claimant's activities of daily living in making a credibility analysis. Rather, the ALJ considered multiple factors in discounting plaintiff's statements concerning the intensity, persistence, and limiting effects of alleged symptoms related to her multiple impairments.  As discussed, physical examinations failed to document any consistently aberrant clinical findings to support Ms. Troutman's claims of daily muscle cramps and back pain.  By her own admission, claimant uses no prescription pain medication, which is an appropriate factor to consider in making a finding about pain. *See Harwell*,  735 F.2d at 1293.  Regarding plaintiff's liver, Dr. Fry found no masses, enlargement, or ascites upon his initial examination in January 2006. T. 375. As the ALJ observed, moreover, the available medical evidence simply fails to confirm Ms. Troutman's allegation that she has cirrhosis of the liver, a diagnosis of

which does not appear in the evidentiary record.  Notwithstanding objective medical evidence establishing that claimant has hepatitis C, diagnostic testing, including a liver biopsy, showed only mild fatty change in the liver with no fibrosis.  T. 418.

With respect to plaintiff's hepatitis C, a hepatic panel ordered by Dr. Kasabian revealed albumin and bilirubin within normal limits and only slightly elevated liver enzymes.    T.   520.    Claimant's   credibility   regarding   the   severity   of   her symptomatology secondary to hepatitis C infection is undermined by her continued alcohol use.  At the time of his psychological evaluation of plaintiff in August 2006, Dr. Moreland noted that plaintiff reported that she drank alcohol about once per week.  T. 290.  Ms. Troutman testified that she last used alcohol in January 2008.  T. 84. Similarly, claimant's allegations of physical limitations secondary to emphysema are not supported by the medical evidence of record.  A chest x-ray performed in October 2006 showed no evidence of acute disease and, despite her allegation that even slight physical exertion leaves her short of breath, plaintiff continues to smoke at least one pack of cigarettes per day.  T. 86, 518.  Further, the evidentiary record reflects that Ms. Troutman has not sought medical treatment for any impairment since May and June 2007.  T. 439, 456-57.

Assuming *arguendo* the ALJ overstated claimant's capabilities vis-a-vis her daily activities, this was only one of several inconsistencies the ALJ identified.  In addition to claimant's activities of daily living, the ALJ properly relied on the lack of abnormal clinical examination findings, claimant's lack of use of pain medication, claimant's lack of regular medical treatment since June 2007, and her continued use of alcohol and tobacco in discounting Ms. Troutman's credibility.  T. 22-23.  The

court thus determines that the ALJ fulfilled his obligation to place on the record explicit and adequate reasons for discrediting claimant's testimony as to her degree of pain and functional limitation, and that the credibility determination is supported by substantial evidence. *See Holt*, 921 F.2d at 1223. Where, as here, the ALJ has conducted a thorough examination of the record and properly considered claimant's medical condition as a whole to reach a determination supported by substantial evidence, this court may not reverse the Commissioner's decision. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is respectfully RECOMMENDED:

The applications for disability insurance benefits and supplemental security income be DENIED.

At Pensacola, Florida, this 5th day of December, 2011.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).